Mary Frances **ROSENBERGER**,
Plaintiff,

v.

**NORTHWESTERN MUTUAL LIFE IN-
SURANCE COMPANY**, Defendant,

Don A. Rosenberger, Intervening
Defendant.

No. T–2034.

United States District Court
D. Kansas.

April 8, 1960.

**634**

Harlow Preston, and Charles Rooney, Sr., of Rooney & Rooney, Topeka, Kan., for plaintiff.

Philip E. Buzick, of Webb, Oman, McClure, Buzick & Waugh, Topeka, Kan., for defendant.

Robert J. Roth, of Hershberger, Patterson, Jones & Thompson, Wichita, Kan., for intervening defendant.

ARTHUR J. STANLEY, Jr., District Judge.

Ruling on motions for summary judgment filed by each party, this court granted the motion of the defendant and denied those of the plaintiff and the intervenor. Rosenberger v. Northwestern Mutual Life Ins. Co., D.C.Kan.1959, 176 F.Supp. 379. Counsel for the plaintiff questions the court's interpretation of Kan.G.S.1949, 59–513.

In this action the plaintiff seeks to recover as beneficiary on several insurance policies issued on the life of her husband. The intervening defendant is the son of the deceased. Plaintiff was convicted of killing her husband, the insured; the jury finding her guilty of manslaughter in the fourth degree (the involuntary killing of another by means of a weapon in the heat of passion. Kan.G.S.1949, 21–419)

The motions of plaintiff and intervening defendant for summary judgment required the court to consider the effect which Kan.G.S.1949, 59–513 might have on plaintiff's right to recover on the insurance policies. The statute provides:

> "No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will or otherwise from such other person any portion of his estate."

The court interpreted "feloniously killing" as meaning a killing done intentionally by the person causing the death. But, at page 383 of 176 F.Supp. the court then stated:

> "However, a determination that the statute bars only those who have killed another intentionally does not mean that plaintiff's motion for summary judgment must be granted. A genuine issue of material fact remains. The judgment rendered in the criminal trial does not preclude re-litigation of the question of intent. * * * The prevailing view is that a conviction for a criminal offense may be received as evidence, persuasive but not conclusive, of the facts upon which it was based. Annotation, 18 A.L.R.2d 1287."

The court now recognizes that this holding was erroneous.

■■ The statute bars one who has been "convicted of feloniously killing" another; it requires a conviction prior to the operation of the bar thereby created. Oberst v. Mooney, 1932, 135 Kan. 433, 10 P.2d 846; Hogg v. Whitham, 120 Kan. 341, 1926, 242 P. 1021. Therefore, in a civil action wherein G.S. 59–513 may have application, the only inquiry for the court is whether the party seeking property through the decedent was *convicted* of feloniously killing the decedent. The issue of the feloniousness of the act has been closed to further inquiry, and the court need only inquire whether the conviction was for a degree of homicide wherein intent to kill is a necessary ingredient.

■ The intervening defendant contends that a criminal judgment cannot be res judicata in a subsequent civil action. In support of this argument State v.

Roach, 1910, 83 Kan. 606, 112 P. 150, 31 L.R.A.,N.S., 670, was cited to the court. That case, however, was concerned with the propriety of admitting evidence of the acquittal in the criminal action. This is the general rule with respect to acquittals for the reason that, as stated in 3 Jones on Evidence § 639, "a judgment of acquittal is a negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt."

It has been pointed out that there must be a conviction before any bar is created; and if the person who took the life of the decedent has been criminally prosecuted and convicted of feloniously killing the decedent, he is precluded by legislative mandate from benefiting from his act. To establish the fact of such conviction, resort must be had to the judgment of conviction.

In Noller v. Aetna Life Ins. Co., 1935, 142 Kan. 35, 46 P.2d 22, 25, the insured and the beneficiary, husband and wife, had died almost simultaneously. The administrator of each estate sought to recover the proceeds of a policy of insurance on the life of the husband. It was contended that the estate of the wife-beneficiary was barred from recovering because the evidence established that she had caused the death of her insured husband. The common law rule that where the beneficiary of an insurance policy feloniously kills the insured it is against public policy to permit him to recover on the policy was asserted. The court met this contention in the following manner:

"  *   *   *   The answer to it is twofold. This court is unable to say that the evidence in the record compels the conclusion that Mrs. Hammatt killed Mr. Hammatt. That is merely one of the conclusions to which a jury might come after weighing the evidence. It is our duty to draw all the inferences and conclusions from the record that go to sustain the position of plaintiff. When this is done, it is still apparent that the jury might have concluded that the tragedy was the result of each one of the participants committing suicide.

"The other answer lies in the law. Situations such as this have been covered in a measure by the passage of R.S. 22–133.  *   *   *   [Predecessor to G.S. 59–513, but made *any* killing conviction a bar.]

"That law was enacted in the session of 1907.

"In January, 1907, the case of McAllister v. Fair, 72 Kan. 533, 84 P. 112, 3 L.R.A.,N.S., 726, had been decided. In that case a husband had killed his wife for the purpose of obtaining her property. This court held since the statute of descents and distributions provided in plain and unambiguous language that the property of a deceased wife descended to her husband in a case where she left no issue, that the property of the murdered wife went to the husband who had murdered her."

The court then noted the provisions of another statute, currently in effect as G.S. 40–414, providing in substance that the proceeds of any life insurance policy "shall inure to the sole and separate use and benefit of the beneficiaries named therein" free of any claims. Continuing, the court stated:

"The above or a similar provision of the statute has been in force in our state for many years. It is the public policy of our state thus stated in language as plain and unambiguous as the law of descents and distributions that the proceeds of an insurance policy shall go to the beneficiary named in the policy.

"Without any doubt, R.S. 22–133 was enacted to cure a situation such as that treated in McAllister v. Fair, supra. It will be noted that it provides that no one who shall be convicted of killing another person from whom they would inherit any property, or would take property by deed, will, or otherwise, shall take such

property. The words 'or otherwise' would apply to a case where the person who did the killing was the beneficiary in an insurance policy.

"R.S. 22–133 only bars the person who did the killing when he has been convicted of the crime. Appellee makes the point that it is against public policy to permit a person to profit by the killing of another. It is the public policy of this state, as announced by the Legislature, that such a person shall not take property from the murdered person in any manner whatsoever, but that he must be convicted of the crime before they are barred. This is the obvious intention of the Legislature in enacting the various statutes to which reference has been made."

■■ The intervening defendant also contends that the construction given to G.S. 59–513 will result in a conflict between that statute and Kan.G.S.1949, 60–109, which provides:

"Where the violation of a right admits of both a civil and criminal remedy, the right to prosecute the one is not merged in the other."

It is at once apparent that no conflict exists between the two statutes. G.S. 60–109 was enacted to allow the state to proceed by criminal prosecution without erecting a bar to a subsequent civil action by the victim or his estate. State v. Ragland, 1951, 171 Kan. 530, 233 P.2d 740. G.S. 59–513 was enacted to prevent the wrongdoer from taking by inheritance or otherwise from a person feloniously killed by him.

■ It is further contended that automatic forfeiture upon conviction would create an irreconcilable conflict between G.S. 59–513 and G.S. 21–120, and would render G.S. 59–513 unconstitutional in view of the Constitution of Kansas, Bill of Rights, § 12. Both G.S. 21–120 and § 12 of the Bill of Rights provide in part that there shall be no forfeiture of estate upon conviction of crime. This same contention was presented to the Kansas Supreme Court in Hamblin v. Marchant, 1918, 103 Kan. 508, 175 P. 678, 6 A.L.R. 1403, rehearing 1919, 104 Kan. 689, 180 P. 811, and it was there determined that the predecessor to G.S. 59–513 was not violative of the Kansas Constitution. It necessarily follows that there would be no conflict with G.S. 21–120.

The interpretation which this court now places upon G.S. 59–513 will not affect the ultimate disposition of the motions for summary judgment as reflected in the original opinion (176 F.Supp. 379). However, to correct the error contained therein and to dispose of what this court had believed to be an issue of material fact, this supplemental opinion will be entered.